**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHARLES IGWE** | § | |
| | § | |
| **V.** | § | **A-14-CV-587 LY** |
| | § | |
| **SAFECO INSURANCE COMPANY OF** | § | |
| **INDIANA** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Motion for Summary Judgment (Dkt. No. 15); Defendant's

Supplement (Dkt. No. 16); Plaintiff's Response (Dkt. No. 21); and Defendant's Objections to

Summary Judgment Evidence and Reply (Dkt. No. 22). The Court held a hearing on the motions on

October 8, 2015. Having considered the motions and responses, as well as the arguments presented

at the hearing, the undersigned submits this Report and Recommendation to the United States

District Judge pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

This is an insurance coverage case removed from state court on the basis of diversity.

Plaintiff Charles Igwe ("Igwe") purchased a homeowners policy insuring his residence ("the Policy")

from Defendant Safeco Insurance Company of Indiana ("Safeco") with coverage dates of September

13, 2010, to September 13, 2011. Dkt. No. 15-1. Igwe made claims under the Policy for losses

incurred because of water damage to his home in October 2010 and March 2011. He alleges breach

of contract and violations of the Texas Insurance Code in connection with Safeco's failure to fully

pay these two claims.

At the hearing, Igwe clarified the claims that he is pursuing in this case. First, he contends

that the policy limits for mold remediation are not applicable because of Safeco's actions. He alleges

that in March 2011, Safeco instructed both him and Servpro (Safeco's remediation contractor) to cease mold remediation and repair activities, and that as a result from March 2011, through October 2011, no action to remediate mold or otherwise dry out the house took place.  He claims that as a result of this, the mold infestation became much worse, and the costs to eliminate the mold and to repair the house increased accordingly.  He argues that these actions by Safeco voided the $5,000 policy limit for mold damage, and that Safeco should be held responsible for the full costs of repairing the mold-damaged areas of the house, notwithstanding the $5,000 policy limit.  Second, he contends that Safeco failed to pay sufficient funds to repair the house until the appraisal process was completed (in October 2013), and that this resulted in Igwe incurring additional costs for alternate living arrangements, costs he claims he is still incurring to this day.  Finally, he contends that Safeco is liable for the value of all of his personal property that was in storage awaiting the repairs to his house, because when Safeco stopped paying the storage fees, Igwe could not afford to pay those fees, and all of his property was seized and sold by the storage company.

Safeco's motion for summary judgment raises four arguments:  (1) Igwe's breach of contract claim on the October 2010 loss is barred by the statute of limitations; (2) Igwe committed fraud in connection with the March 2011 claim, which voids the Policy as a matter of law;[1] (3) Igwe has failed to present any evidence that Safeco failed to pay the amounts owed under the Policy; and (4) Igwe cannot bring a bad faith claim in the absence of establishing that Safeco breached the insurance contract.

---

[1]Safeco has also lodged a counter-claim based on Igwe's alleged fraud — contending that it suffered $50,000 in damages because of the fraud.  Safeco has not moved for summary judgment on this counter-claim and it is not addressed in this Report and Recommendation.

## II.  UNDISPUTED FACTS

Igwe reported his first claim under the Policy, Claim No. 819604644008 ("Claim No. 1"), on October 20, 2010.  This claim arose out of a water leak in the master bedroom.  Safeco investigated the claim and issued Igwe a payment of $21,719.23.  Dkt. No. 16-1.  Though it is unclear when this payment was made, the record reflects that Igwe received Safeco's final estimate on the claim by at least April of 2011.  Dkt. No. 15-23.[2]  Igwe did not make a claim for damage to personal property or for additional living expenses with regard to this claim. Dkt. No. 16-1 at ¶ 3.

Igwe made his second claim under the Policy, Claim No. 101039854036 ("Claim No. 2"), in March of 2011.  This claim also arose from a water leak.  On this claim, Igwe sought payment for damage to the dwelling, damage to personal property, and additional living expenses.  Safeco estimated the actual cash value of these losses to be $128,851.00, which included the policy limits for mold coverage for the policy periods.  *Id.* at ¶¶ 3-4.  On the personal property portion of the claim, Safeco issued a payment to Igwe September 27, 2011, in the amount of $49,216.50.  Dkt. No. 15-2.  On November 5, 2012, Safeco issued payment for $55,954.59, which appears to have been payment to repair the damage to the residence, less the deductible.  Dkt. No. 16-1 at ¶ 4.  Igwe disputed Safeco's estimate of the cost to repair the property, and Safeco invoked the Policy's appraisal provision to resolve the dispute.  On October 8, 2013, the appraisal panel issued an award, and Safeco paid the appraisal award on October 18, 2013.  *Id.*[3]

---

[2]Safeco attaches over 500 pages of documents to its summary judgment motion.  The records submitted are in many instances confusing, particularly with regard to the amounts and dates of payments made to Igwe.  Safeco thus relies heavily in its motion on affidavit testimony rather than documents, and some details regarding the underlying facts remain unclear.

[3]The summary judgment evidence does not indicate what issues were submitted to the appraisal process, what amount Igwe sought, or what the award was.  Igwe, however, does not dispute that the appraisal process was followed, or that Safeco paid him consistent with the appraisal award.

As noted, a portion of Claim No. 2 involved a request by Igwe for lodging and living expenses due to the second water incident rendering Igwe's house uninhabitable.  The evidence reflects that Safeco paid Igwe for lodging and meal expenses from March 10, 2011 to December 2, 2011. Dkt. No. 16-1 at ¶ 6.[4]   Because Igwe contended that he had not been keeping copies of receipts in the first several months after the water damage rendered his residence uninhabitable, in July of 2011, he requested that Safeco allow him to submit his living (food) expenses on a per diem basis.  *Id.* at ¶ 7.  Safeco agreed to accommodate this request, but only through July 25, 2011, after which it would require Igwe to submit receipts for his actual meal costs.  *Id.*  Igwe thereafter followed up with an email to claims adjuster Rod McAtee requesting per diem payments of $39,192, for meals from March 10, 2011, through July 25, 2011. The request was calculated using a figure of $71 per person per day for 138 days for Charles Igwe, his wife Wilma, and children Chinedu and Chima. Dkt. No. 15-3.[5]  Igwe has conceded that he was not in fact paying for meals for his wife and children during much of this time.  Dkt. No. 15-20 at 101. Further, the undisputed evidence is that

---

[4] Safeco contends in its motion that it paid Igwe $91,801.87 for temporary housing and meals and $5,280.22 for mileage.  It fails to cite any record evidence for this claim, however, and the Court has not located any.

[5]Igwe arrived at the $71 per day figure using $12 per day for breakfast, $18 for lunch, $36 for dinner, and $5 for incidentals, per day.  Though the spreadsheet Igwe submitted clearly contains a request for four sets of daily meals for 138 days, the name on each of the four spreadsheets is "Chima Igwe."  The covering email, however, contains the subject line "per diem for all" and lists "Attachments" of "1-Per_Diem_Form_for_charles-Igwe.xls; 1-Per_Diem_Form_for_chinedu-Igwe.xls; 1-Per_Diem_Form_for_wilma-Igwe.xls; 1-Per_Diem_Form_for_chima-Igwe.xls." There does not appear to be any dispute that in sending his email to McAtee, Igwe was requesting that he be reimbursed for three meals a day over the entire time period for himself, his wife, and his two minor children Chinedu and Chima.

Safeco paid Igwe based on his submissions, though it adjusted the per diem amounts downward, paying him $17,200 (instead of the $39,192 he requested).  Dkt. No. 15-4.[6]

Safeco also contends that Igwe represented that he needed living space to accommodate his family.  Specifically, according to the affidavit of Sandra Parker, the Safeco Adjuster assigned to handle Igwe's claims,

> On June 17, 2011, Mr. Igwe told Rod McAtee that Safeco should be searching for temporary housing that would accommodate his family of six.  Safeco relied upon Mr. Igwe's representations that he required two hotel rooms for his family and authorized payment for either two hotel rooms or a two bedroom suite from June 30, 2011 through November 3, 2011.

Dkt. No. 16-1 at ¶ 6.  Igwe has admitted that he was living alone at all times relevant to this case—both before the water leaks, and after he was forced to move out of the house. Dkt. No. 15-20 at 18.  He contends, however, that because his wife and children visited him he needed room to accommodate them at times, Dkt. No. 21-1 at 3, and his wife testified that the children did at least occasionally visit Igwe at the time he was staying in hotels, Dkt. No. 15-21 at 21.

Finally, Igwe also made claims against the Policy for loss of or damage to certain personal property.  On March 10, 2011, Safeco hired Servpro to clean up the damaged house and remediate or discard damaged household goods and furniture.  Dkt. No. 15-7.  Among other things, Servpro prepared an inventory of personal property it deemed unsalvageable (all of which is listed as having been located in the garage), as well as items it had cleaned and items it determined were in good

---

[6]Dkt. No. 15-4 is a letter from McAtee to Igwe stating without explanation that Safeco was tendering $17,200 for living expenses, and noting that "[c]opies of the four revised per diem worksheets are attached for your records." *Id.* Those attachments are not included in the exhibit filed with the Court, however, so it is not clear how Safeco revised the $71 per day figure Igwe used. Mathematically, the $17,200 payment correlates with a payment of $4,300 per person, or $31.16 per person per day, as opposed to the $71 per person per day Igwe requested.  Regardless of the details of the reduction, it is clear that even though Safeco paid less than Igwe requested, it tendered more than just Igwe's meal expenses, given that the amount Igwe had requested for just his meals was $9,798, and Safeco paid $17,200 on this part of the claim.

condition.  Dkt. Nos. 15-8; 15-10; 15-11.  On August 15, 2011, Igwe submitted to Safeco a list of property he claimed was damaged and for which he sought reimbursement under the Policy.  Dkt. Nos. 16-1 at ¶ 5; 15-13.  There were many items on this list which were not contained on Servpro's "unsalvageable" list.  Igwe submitted a second inventory on June 6, 2012.  Dkt. Nos. 16-1 at ¶ 5; 15-14.  In total, Igwe claimed a loss for damaged or destroyed personal property of $900,000.  Among other things, Igwe claimed he lost a vintage phonograph valued at $6,500, a vintage record collection valued at $25,000, and requested payment for damaged documents at more than $1,000 per page.  On this inventory Igwe also listed property as non-salvageable that Servpro had listed as either having been cleaned and repaired or as being undamaged.  *Id.*

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' where a reasonable party would return a verdict for the non-moving party." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 282 (5th Cir. 2003) (citation omitted).  In considering a summary judgment motion, courts view the evidence in the light most favorable to the non-moving party.  *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

## IV.   ANALYSIS

### A.     Claim No. 1

Safeco argued in its summary judgment motion both that Claim No. 1 was resolved through the appraisal process, and that Claim No. 1 was time barred.  At the hearing on Safeco's motion for summary judgment, Igwe conceded that there were no longer any issues in dispute with regard to

Claim No. 1.[7]  Because Igwe has conceded this claim, judgment should be entered in Safeco's favor on it.

**B.      Claim No. 2**

       **1.      Fraud**

       Safeco contends that Igwe committed fraud with regard to this claim, which gives Safeco the right to void the policy, deny coverage, and seek reimbursement for payments already made.   This is an affirmative defense, and Safeco pled it accordingly.  Dkt. No. 14 at ¶ 35.  The relevant policy language states:

> **Concealment or Fraud**
>
> We may deny coverage for a loss or occurrence if you or an insured have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with presentation or settlement of a claim.  We may void this policy if at the time of trial it is shown the misrepresentation was fraudulently made, misrepresented a fact material to the question of coverage under the policy and caused us to waive or lose a valid defense to the policy.
>
> We may deny coverage because of fraud or material misrepresentation even after a loss or occurrence.  This means we will not be liable for any claims or damages

---

[7] This was the conversation the Court had with counsel for Mr. Igwe on this point:

| | |
|---|---|
| COURT: | . . . .  Is there any dispute remaining at this point about the handling of the first claim? |
| GREEN: | We think at this point after the arbitration process, uh the – |
| COURT: | Appraisal? |
| GREEN: | – appraisal process that the first claim has pretty much been taken care of – |
| COURT: | Okay. |
| GREEN: | – and that the losses that we're complaining about here today – |
| COURT: | Arise out of the second claim? |
| GREEN: | – of the – well, as a result of the second claim, but particularly the conduct of the insurance company in stopping the drying process, stopping all action, and telling my client that if he did so that he'd be – would not be cooperating and interfere with their investigation. |

Digital Recording of 10/8/2015 Hearing at 10:44:28 to 10:45:00.

which would otherwise be covered.  If we make a payment, we may request that you reimburse if so, you must reimburse us for any payments we may have already made.

Dkt. No. 15-1 at 82-83 (Amendatory Endorsement) .  Safeco asserts that  Igwe committed fraud by: (1) misrepresenting his daily living expenses; (2) falsely stating that he needed room to house his wife and children; and (3) falsely stating the value of his personal property loss with the intent that Safeco pay him money which he was not entitled to receive.

Insurance contracts are subject to the same rules of construction as ordinary contracts. *Archon Invs., Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 338 (Tex. App. – Houston [1st Dist.] 2005, pet. denied) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997)).  When a policy permits only one reasonable interpretation, courts construe it as a matter of law and enforce it as written. *Id.* (citing *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992)). When construing an insurance policy, "[the court] must strive to effectuate the policy as the written expression of the parties' intent." *Id.* (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)).  The policy language in this case clearly provides that Safeco had the right to deny coverage on a claim if Igwe misrepresented any material fact in connection with the presentation or settlement of the claim, even if the fraud occurred after a loss or claim.  It also grants Safeco the right to seek recovery of payments already made.  Numerous Texas cases have applied concealment or fraud provisions in insurance policies in circumstances like the present.[8]

---

[8]*See, e.g., Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 878 (Tex. 1999) (fraud provision includes a "condition or bar to coverage for all insureds if any one of them commits fraud or intentionally conceals or misrepresents a material fact"); *McCullough v. State Farm Fire & Cas. Co.*, 80 F.3d 269, 271 (8th Cir.1996) ("We agree with State Farm that the plain meaning of the "concealment, misrepresentations, or fraud clause in the policy . . . was clear: that the entire policy would be immediately void. . . ."); *Howard v. State Farm Lloyds*, H04–0352, 2005 WL 2600442 (S.D. Tex., 2005) (granting summary judgment because Plaintiff violated a concealment or fraud provision because it "void[ed] the Policy as to all coverages.").

Under Texas law, to void an insurance policy for misrepresentation, the supreme court has held that the insurer must plead and prove the following: (1) the making of a representation; (2) the falsity of the representation; (3) reliance on the misrepresentation by the insurer; (4) the intent to deceive on the part of the insured in making the misrepresentation; and (5) the materiality of the misrepresentation. *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616–17 (Tex. 1980).

As noted, Safeco relies on three theories to support its fraud/misrepresentation defense under the Policy.  While Igwe's actions are questionable on all three fronts, the clearest case of fraud is presented by Igwe's request for per diem payments for meals from March 10, 2011, to July 25, 2011. As described above, Igwe submitted four spreadsheets to Safeco requesting reimbursement for the costs of meals for him, his wife, and his two minor children for every day during that time frame. The evidence is undisputed that during this time frame, Igwe's wife and children did not reside with him, and his children visited him infrequently, on occasional weekends.[9]   Igwe has also admitted that he did not pay for meals for his wife or children if they were not with him.[10]   Further, the

---

[9]*See, e.g.,* Igwe's Affidavit, Dkt. No. 21-1 at 3.  Further, Igwe's wife, Wilma, testified that she and Igwe had been separated since September of 2009, and that she lived in San Antonio and had primary custody of the children.  Dkt. No. 15-21 at 8-9.  She also testified that Igwe would sometimes pick up his children on Friday evening or Saturday morning, and then return them to San Antonio on Sunday, and that their visitation became less frequent once Igwe was out of his house. *Id.* at 10-11, 21.

[10]When asked about his per diem request for meals, Igwe testified as follows:

Q  (BY MS. TUBBS) Well, it wouldn't be a true statement – right – that every day – every single day between March 10, 2011 and July 25th, 2011 that you provided meals for yourself and your wife and your two minor children? You didn't do that every day.
A  Not for my wife, not every day.
Q  And not for your children either.  Right?
A  Not all the time.
Q  They weren't with you every day for three meals a day from March 10th, 2011 through July 25th, 2011.  Isn't that correct?
A  I made an estimate of what I needed to do to provide for them.

evidence is undisputed that Safeco compensated Igwe for meals for all four individuals.  Thus, the undisputed evidence shows that Igwe represented that he had paid for three meals everyday for his wife and children when in fact on most of those days he did not pay for their meals, that those statements were material to a claim made under the Policy, and that Safeco relied on those statements and paid Igwe.  This is sufficient to entitle Safeco to judgment in its favor on the fraud defense.  *See United of Omaha Life Ins. Co. v. Halsell*, 2010 WL 376428, slip op. at * 4-5 (W.D. Tex., 2010) ("Reliance is established when the insurer does not know the representations are false . . . . The representation is material if it actually induces the insurance company to assume the risk.")

Igwe's only response to this is to claim that he told Safeco employees that his wife and children lived in San Antonio, and that he gave a Safeco employee his wife's address and telephone number in San Antonio.  Dkt. No. 21-1 at 3.  Igwe does not deny that he did not incur meal expenses for four people for the periods he submitted those expenses, but instead contends that the onus was on Safeco to determine he was lying about those expenses.  This is not the law.  As noted by the Texas Supreme Court  in *Koral Indus. v. Security–Connecticut Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990):

> When one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care.

---

Q     But you weren't providing three meals every single day for that period of time, were you?

A     I provided  – I made an estimate of what it was going to cost me and I would provide for them as – when I saw them, yes.

Q     Well, when you saw them?

A     Uh-huh.

Dkt. No. 15-20 at 101.

Igwe's Affidavit makes his obfuscation even more evident, because by informing Safeco that his wife and children sometimes stayed with him, it made it difficult for Safeco to determine if the charges for his family's expenses were proper, when the undisputed summary judgment evidence now shows that they clearly were not.[11]

Because the undisputed summary judgment evidence demonstrates that Igwe committed fraud in seeking to recover per diem meal expenses he did not incur, Safeco is entitled to summary judgment on all of Igwe's causes of action regarding Claim No. 2.

### 2.      Damages in Excess of Policy Limits

Based on the prior finding of fraud, Igwe is also not entitled to recover on his claim that he is entitled to damages beyond the policy limits for mold remediation due to Safeco's actions, given that the claim derives from a claim of breach of the insurance policy.  But even if this claim were not barred by his fraud, the claim fails for two independent reasons:  there is no authority allowing for such consequential damages, and Igwe's proof on the claim is lacking.

Igwe contends that he is entitled to payments in excess of the Policy limits for the cost of remediating mold damage to his home because Safeco caused the mold to spread by instructing its

---

[11] As noted in the recitation of the facts, Safeco also presented summary judgment evidence that Igwe requested that Safeco provide him accommodations sufficient for his wife and two children, despite the fact that they did not live with him.  While it appears that Igwe dissembled in this instance as well, the evidence is not undisputed on this point, because Igwe contends he informed Safeco that his wife and children lived in San Antonio, and he needed the additional space for their visits.  The case is similar with regard to Igwe's attempts to receive compensation for items he claimed had been destroyed, when those items had been identified by Servpro as either in good condition, or as cleaned and salvaged.  Dkt. No. 16-1; Dkt. Nos. 15-16 to 15-18. While Igwe attempts to characterize this issue as a mere disagreement over the value of the property, he fails to explain why he requested reimbursement for items Servpro identified as cleaned and salvaged or in good condition.  Further, it appears clear that Igwe grossly inflated the value of numerous items in his inventory, such as requesting tens of thousands of dollars for damaged documents.  However, though the evidence shows Igwe attempted to defraud Safeco, what is lacking is any evidence that Safeco acted in reliance on any of these representations. The undisputed evidence of fraud with regard to the per diem expenses is sufficient to void the Policy.

contractor and Igwe to cease any drying activities.  Safeco responds that it has paid Igwe the policy limits for mold damage for both of his claims under the Policy, and it cannot be required to pay more because these damages are not covered by the Policy.  Additionally, Safeco argues that to make out a claim for damages covered by mold, even if covered by the Policy, Igwe must present expert testimony of causation to survive summary judgment, and he has not done so.

An insured is not entitled to recover under an insurance policy unless he proves his damages are covered by the policy.  *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), overruled in part on other grounds by *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App. – San Antonio 1999, pet. denied).  The Safeco policy issued to Igwe provides the following regarding mold damage:

> PROPERTY LOSSES WE DO NOT COVER
>
> We do not cover loss caused directly or indirectly by any of the following excluded perils.  Such loss is excluded regardless of the cause of loss or any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> ***
>
> 17.  Fungi, Wet or Dry Rot, or Bacteria meaning the presence, growth, proliferation or spread of fungi, wet or dry rot, or bacteria.
>
> This exclusion does not apply to the repair, replacement or restoration of damaged covered property subject to the limit of liability shown in the Declarations for fungi, wet or dry rot or bacteria when fungi, wet or dry rot or bacteria is the result of a covered loss or to the extent coverage is provided under Section I - Property Coverages, Additional Property Coverage -Fungi, Wet or Dry Rot, or Bacteria.

Dkt. No. 15-1 at 43-45.  The Declarations page of the Policy provides that the limit of liability for mold coverage is $5,000 per incident.  *Id.* at 33.  On November 5, 2012, Safeco issued  payment to Igwe for the limits of the mold coverage for both claims. Dkt. No. 16-1 at ¶ 4.  Safeco argues that since it tendered the policy limits for mold damage it cannot be liable for any additional damage as

a matter of law. *See Ramirez v. State Farm Lloyds, No. CA-C-02-359-H*, 2004 WL 612862 at *4 (S.D. Tex., January 27, 2004) (the general rule is "[i]nsurance coverage seeks to indemnify the insured up to the amount of the policy, the objective being that the insured should neither reap economic gain nor incur a loss if adequately insured.).  Igwe has cited no caselaw providing for payment in excess of the Policy limits.  He conceded at the hearing that he was not aware of any cases in which Texas courts had allowed recovery above a policy limit on such grounds.  Lacking any such authority, Igwe is bound by the contract, and his claim for additional damages for mold remediation fails.

Alternatively, Igwe has failed to demonstrate that he has any admissible evidence to support the essence of his claim—that Safeco's delay in remediating the mold from March to October of 2011, caused it to worsen greatly, and to make the repair costs exceed the policy limits.  In order to make out this claim, Igwe must first show that the mold for which he sought additional remediation costs was caused by an event covered by the homeowners' policy.  Igwe asserts that the mold was a result of the second leak and Safeco's directions to cease repairs.  Igwe presents only his own testimony that the leak and cessation of drying caused tho mold to grow.[12]  However, under Texas law, the cause of any specific mold infestation is not a subject within the general experience or common sense of a lay person and requires expert testimony. *See, e.g., Qualls v. State Farm Lloyds*, 226 F.R.D. 551, 558 (N. D. Tex. 2005); *Kemmerer v. State Farm Ins. Co.*, 2004 WL 87017, *3 (E. D .Pa. 2004).  Igwe has not submitted any expert testimony that Safeco's actions  caused the mold issues in his home.  The closest he comes is an excerpt from the deposition of Teresa Baer, who is

---

[12]Igwe relies upon an e-mail from Emily Rodriguez (Dkt. No. 21-1 at 5) in support of his claim.  Safeco objected to the Rodriguez email as hearsay.  Dkt No. 22 at ¶ 1.  That objection is valid and sustained, and thus the Court will not consider the contents of that email (which at best only indicates that there was water and mold damage in March 2011, immediately after the second water leak).

an engineer with training and accreditation as a mold remediation specialist.  Dkt. No. 21-2.  While Baer is clearly a qualified expert, all her testimony reflects is that she inspected Igwe's residence in March 2012, a year after the leak.  When specifically asked whether she knew "if the condition of the mold in the house was any worse in February or March of 2012 . . . than it was when the claim was made in 2011," she responded that she did not know, and confirmed that she had no knowledge or information regarding the condition of the house in 2011.  *Id.* at 27-29.  Having failed to present expert evidence regarding the cause of the mold at issue in this case, Igwe has failed to raise a genuine issue of material fact and Safeco is entitled to summary judgment on this issue.  *See Cagle v. Allstate Texas Lloyds*, 2005 WL 2076145 (S.D. Tex. 2005) (unreported opinion).

## C.      Other Consequential Damage Claims

Igwe makes two other claims that are difficult to characterize.  His counsel referred to them at the hearing as "extra-contractual" claims.  First, Igwe argues that because Safeco did not offer a reasonable amount of money to him to repair the house, he was forced to go through the appraisal process to obtain a reasonable sum, and he is therefore entitled to alternate residence living expenses through at least October 2013 (when the appraisal process was completed).  Second, he contends that Safeco is obligated to continue to pay storage fees for his personal property until such time as all of the repairs on his house are completed, and the house is once again habitable.  He contends that Safeco's obligations on these items are not limited by the policy because of the delays caused by Safeco.[13]

First, as with his mold damage policy limit argument, Igwe has failed to identify a legal theory that would allow him to recover more than the policy limits for these items.  Second, as these

---

[13]There is no evidence in the record regarding what Safeco has already paid for living and storage expenses, but—given counsel's argument—presumably the payments have come close to or have exceeded the policy limit of $151,460 for "Additional Living Expense and Loss of Rent." *See* Dkt. No. 15-1 at 11.

issues arise out of Claim No. 2, the Court's finding that Igwe committed fraud on that claim is fatal to this argument. Igwe has failed to identify any portion of the Policy requiring Safeco to pay for the indefinite storage of his property, or the indefinite provision of an alternative residence. Safeco's failure to make such payments is not a breach of the policy.

## D.    Extra-Contractual Claims

Igwe has also sued Safeco for violations of Chapters 541 and 542 of the Texas Insurance Code and for breach of its fiduciary duty of good faith and fair dealing. He alleges that Safeco had a duty to deal fairly and in good faith with its insured in the processing and payment of claims and that defendant breached this duty. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). To establish a breach of the duty of good faith and fair dealing, a party must show: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Stoker*, 903 S.W.2d at 340. Generally, however, "an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, 459 Fed.Appx. 366, 368 (5th Cir. 2012) ( citing *Liberty Nat'l Fire Ins. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996)); *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253–54 (Tex. 2009) ("there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered"). The two noted exceptions to this rule are the insurer's: (1) failure to timely investigate the insured's claim or (2) commission of "some act, so extreme, that would cause injury independent of the policy claim." *Stoker*, 903 S.W.2d at 341.

The Court has already found that Igwe may not recover under the Policy for breach of contract. Because Safeco did not breach the insurance contract, it cannot be held liable for extra

contractual or bad faith causes of action related to its handling of Igwe's claim. *See Toonen v. United Servs. Auto Ass'n*. 935 S.W.2d 937, 941-944 (Tex. App. – San Antonio 1996, no writ (citing *Repulic Insurance Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)); *Higginbotham v. State Farm Mutual Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (holding that if there is no merit to a bad faith claim, there is no merit to the statutory claims).

Igwe has presented no evidence that Safeco failed to timely investigate the claim or that it committed an act so extreme as to cause injury independent of the policy claim. While Igwe asserts that Safeco caused mold to grow in his home because it ordered its contractors to cease drying activities, even assuming Igwe had evidence to prove this, there is no summary judgment evidence that any such delay caused the additional mold he complains of. Because Igwe cannot establish a breach of contract by Safeco, and because he has failed to establish an exception to the general rule that an insured may not prevail on a bad faith claim absent a showing that the insurer breached the contract, Safeco's motion for summary judgment as to Igwe's bad faith claim should also be granted.

## E.     The Appraisal Process

Lastly, the Court feels compelled to mention what felt like an elephant in the room throughout the hearing—the fact that the contract of insurance provided an appraisal process to settle disputes, the parties submitted their disputes about repair costs to the appraisal process, and Safeco paid whatever award was rendered by the appraisers. *See* Dkt. No. 15-1 at 50-51 at ¶ 8; Dkt No. 16-1 at ¶ 4. Under Texas law, compliance with the appraisal process and prompt payment of the appraisal award means that a carrier cannot be in breach of the contract and cannot be liable for prompt payment penalties or statutory or common-law "bad faith" damages. *Waterhill Cos. Ltd. v. Great Am. Assurance Co.*, 2006 WL 696577, at* 2 (S.D. Tex. March 16, 2006); *Amine v. Liberty Lloyds of Texas Ins. Co.*, 2007 WL 2264477 (Tex. App. – Houston [1st Dist.] 2007, no pet.); *Toonen,* 935 S.W.2d at 940. Notwithstanding this, the carrier did not make any argument in its

summary judgment motion on this basis.  Because it was not raised by the movant, the Court cannot base its ruling on the argument as well, though it appears it would have been a valid basis for judgment.

## V.  RECOMMENDATION

Based upon the foregoing, the Court **RECOMMENDS** that the District Judge **GRANT** Defendant Safeco's Motion for Summary Judgment (Dkt. No. 15).[14]

## VI.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

---

[14]In the motion for summary judgment Safeco does not seek any relief on its counter-claim, and that claim will thus remain pending should the District Judge adopt this recommendation.

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 27th day of October, 2015.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

18